OPINION OF THE COURT
George D. Marlow, J.
On July 8, 1998, defendant, Dalkeith McIntosh, was found *428 guilty by a jury of murder in the first degree, a class A-l felony, in violation of Penal Law § 125.27 (4 counts); murder in the second degree, a class A-l felony, in violation of Penal Law § 125.25; attempted murder in the first degree, a class A-l felony, in violation of Penal Law §§ 110.00 and 125.27 (3 counts); assault in the first degree, a class C armed felony, in violation of Penal Law § 120.10 (1); and criminal possession of a weapon in the second degree, a class C armed violent felony, in violation of Penal Law § 265.03.
The District Attorney filed notice pursuant to CPL 250.40 of his intention to seek the death penalty, and has not withdrawn this notice.
On July 13 and July 21, 1998, this court resolved the issues raised in this motion by orally rendering its decision on the record before the sentencing proceeding commenced.
On July 23, 1998 the jury rendered its decision of life imprisonment without parole on the two multiple murder counts (Penal Law § 125.27 [1] [a] [viii]) and they were not unanimous on the two witness elimination counts (Penal Law § 125.27 [1] [a] [v]).
This decision shall serve as an amplification of the court’s oral decision.
Defendant has moved for an order invalidating CPL 400.27 (10) on its face and as applied to this case because it requires the court to instruct the jury prior to the sentencing phase that defendant will receive a sentence with a minimum term of between 20 to 25 years and a maximum term of life in the event the jury fails unanimously to agree on a verdict of either death or life imprisonment without parole at the conclusion of the sentencing proceeding.
Defendant asks the court instead to instruct the sentencing jury that, if the jury fails to reach unanimous agreement about the sentence, the court will simply sentence defendant without first informing the jury that the life sentence will have a minimum range of between 20 and 25 years.
In the alternative, defendant asks the court not to instruct the sentencing jury in any manner concerning the consequences of its failure to reach a unanimous agreement about a sentence of either death or life imprisonment without parole.
As a second alternative, as set forth in motion No. 45, defendant requests that the court apprise the jury of the full range of sentencing options available in the event the jury is unable *429 to unanimously agree on either life in prison without parole or a sentence of death.
Further, defendant moves for immediate sentence on the noncapital counts prior to the penalty phase. Defendant’s motion for immediate sentence is denied pursuant to CPL 390.20 (4) which mandates a presentence report prior to imposition of an indeterminate sentence. Moreover, the court had a unique opportunity, not available in the ordinary case, to hear mitigation evidence which it may take into consideration.
Defendant’s request that the jury be instructed about the possibility of consecutive sentences if they fail to agree on a sentence of life in prison without parole or death is granted for the reasons set forth hereinbelow.
Defendant challenges CPL 400.27 (10) on the ground that it may coerce those jurors at the penalty phase, who believe that defendant should be sentenced to life in prison without parole, into abandoning their position and, instead, voting for death based on their knowledge that a jury’s nonunanimity would result in an indeterminate sentence of 20 to 25 years to life.
At issue is the following language in CPL 400.27 (10) requiring the court to instruct the jury that “with respect to each count of murder in the first degree the jury should consider whether or not a sentence of death should be imposed and whether or not a sentence of life imprisonment without parole should be imposed, and that the jury must be unanimous with respect to either sentence. The court must also instruct the jury that in the event the jury fails to reach unanimous agreement with respect to the sentence, the court will sentence the defendant to a term of imprisonment with a minimum term of between twenty and twenty-five years and a maximum term of life.”
Defendant contends that this provision is unconstitutional both on its face and as applied to this case, although he cites no controlling Federal authority for that proposition. This provision, along with the remainder of New York State’s death penalty statutes, took effect September 1, 1995. None of these statutes have yet been reviewed by the New York Court of Appeals.
Moreover, it appears that this provision is unique in mandating that the court impose a sentence less severe than either of the options available to the jury if they are deadlocked.
The New Jersey Supreme Court, interpreting a somewhat analogous provision under their law, stated, “[t]o hide from the *430 jury the full range of its sentencing options, thus permitting its decision to be based on uninformed and possibly inaccurate speculation, is to mock the goals of rationality and consistency required by modern death penalty jurisprudence” (State v Ramseur, 106 NJ 123, 311, 524 A2d 188, 284). Under New Jersey law, the jury was instructed to choose between a sentence of death and a sentence of 30-year minimum term of imprisonment without parole and instructed that a deadlock would result in the latter sentence. The court reaffirmed its holding in State v Bey (112 NJ 123, 180, 548 A2d 887, 916) and said, “[t]o prevent unacceptable speculation about the consequences of a non-unanimous verdict, the court must inform the jury of its option of returning a final, non-unanimous, verdict that would result in a minimum of thirty years of imprisonment without parole.” (See also, State v Hunt, 115 NJ 330, 558 A2d 1259.)
Defendant’s argument that the New York statute is unconstitutional, as unduly coercive, is based on unwarranted speculation that jurors who are otherwise disposed to a life sentence without parole will ignore the instructions which this court will give, forsake their life sentence positions, and instead vote for a death sentence,, only to prevent what may be in their minds, an unacceptable third alternative, i.e., an indeterminate sentence with eligibility for parole consideration after 20 to 25 years. Certainly, the converse is more likely — that is, a juror who might otherwise favor a death sentence may be willing to accede to the lesser penalty of life in prison without parole in order to avoid the possibility of parole.
Were the court to adopt defendant’s suggestions (i.e., that the jury be told only that the court will sentence the defendant in the event of a deadlock, and/or that the jury will be given no instruction as to the consequences of a failure to reach unanimous agreement), the jury would be left to speculate, perhaps wildly, about defendant’s potential fate. For example, an inadequately informed jury could well surmise that a deadlock may result in a new trial with a chance of an acquittal, or a sentence with parole eligibility in far less than 20 years. Certainly, any of these scenarios might frighten a jury even more — especially after it has unanimously found that defendant intentionally killed two people — than the fact that he may be considered for release after serving at least 20 to 25 years. Indeed, this court holds the strong belief that it is decidedly more likely that those jurors who might be inclined to choose to impose a sentence of death — after having also learned *431 from the court that a deadlock would result in parole eligibility after 20 or 25 years — would instead opt for life imprisonment without parole in order to insure defendant’s permanent confinement.
Moreover, in this case, since defendant has been found guilty of four of five counts of murder in the first degree, as well as other noncapital crimes, the minimum term of an indeterminate life sentence which the court may legally impose even after a potential jury deadlock could be as long as 75 years, in light of the potential for consecutive sentences on the capital and noncapital counts of which defendant was convicted. Accordingly, the court, in part, instructed the jury at the end of the sentencing proceeding as follows:
“The law says you may return a verdict of ‘not unanimous’. In addition, the law says that I will, at that juncture, be required to impose a sentence on the defendant. The law further says that, under those circumstances, I must impose a sentence of life in prison. However, the law also says I must fix a term in years which the defendant must serve before he can even be considered for parole. Must means must.
“While the law prohibits that term from being less than 20 years before Mr. McIntosh can be even considered for parole, it also allows me to decide, in this particular case, that the defendant may not be considered for parole until a period of up to 75 years has expired. That means, I have the power, and I must, fix the minimum term the defendant must serve in prison at whatever number I deem appropriate and therefore select. That number can be as high as 75 years.”
This court agrees with the reasoning of Judge Arthur Pitts in People v Shulman (NYLJ, Jan. 30, 1998, at 35, col 4 [Suffolk County Ct]), finding that CPL 400.27 (10) is not fatally coercive nor otherwise constitutionally prohibited. The court therein found the proposed instruction analogous to the one required by CPL 300.10 (3) in cases where a defense of not responsible by reason of mental disease or defect has been interposed. In that situation, the court is mandated to instruct the jury that, in the event they acquit on that ground, there will be hearings as to defendant’s present mental condition and, where appropriate, involuntary commitment proceedings. (People v Shawcross, 192 AD2d 1128, lv denied 82 NY2d 726; People v Hays, 132 AD2d 620; People v Kinitsky, 119 AD2d 159.) As Judge Pitts noted, that instruction is designed to quell juror fears that an acquittal will permit defendant to avoid custody.
Here, the mandated instruction in CPL 400.27 (10) will “ ‘prevent unacceptable speculation about the consequences of *432 a non-unanimous verdict’ ”, a critical concern in jury deliberation. (See, State v Hunt, supra, 115 NJ 330, 383, 558 A2d 1259, 1286; State v Ramseur, supra, 106 NJ, at 311, 524 A2d 188.)
Lastly, and of equal if not greater import, the court notes that the language of CPL 400.27 (10) is mandatory and this statute, like all others, carries with it a strong presumption of validity, to be stricken as unconstitutional only as a last resort. Except in rare instances, trial courts may not substitute their judgment for that of the Legislature in determining the constitutional validity of any statute. (People v Davis, 43 NY2d 17; People v Velez, 88 Misc 2d 378.) Trial level Judges must adhere to the fundamental State policy expressed in the following clear and unambiguous legislative edict which declares, “[cjourts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent on its face.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 312-313.)
In the absence of controlling Federal authority to the contrary, and because CPL 400.27 (10) is at least arguably valid, this court sees no basis whatsoever to strike this section as unconstitutional. This issue is best left for the State’s highest Court to address should it ever properly come before that body.
The foregoing constitutes the decision and order of the court.